favorable report, have been produced. But this petition, which is dated April 1, 1846, refers to an entirely different tract from that described in Real's deed, and it appears not to have been acted on. A petition of Galindo to José Castro, dated May 12, 1846, is also produced, in which Galindo prays that the debt due him by the mission may be paid by a grant of the land petitioned for by him two years before. On this petition is a marginal order by Castro, directing Galindo to apply to the priest that the latter may satisfy his claim, if just, by giving him a piece of land. This order is dated June 9, 1846.

But independently of the objection that Castro, as commandant general, had no authority to empower the priests to dispose of mission lands, the document has no sufficient evidence of authenticity. It is not found in the archives, but is produced from the custody of the claimant, and Mr. Hopkins testifies that the date appears to have been originally written July 9th, and altered to June 9th. If the document was, in fact, written in July, it could not have been the authority to Real for making a deed in June. I think that, under the proofs, the claim must be rejected.

---

## Case No. 15,184.

UNITED STATES v. GALLAGHER.

[See Case No. 3,393.]

---

## Case No. 15,185.

UNITED STATES v. GALLAGHER.

[2 Paine, 447.] [1]

Circuit Court, New York.[2] March, 1832.

INDICTMENT—ASSAULT WITH DANGEROUS WEAPON.

The twenty-second section of the crimes act of March 3, 1825 (7 Bior. & D. Laws, 401 [4 Stat. 115]), providing for the punishment of assaults with dangerous weapons, contemplates a misdemeanor and not a felony; and in an indictment under the act for such an offence, it is not necessary to charge that the assault was committed feloniously, or with intent to perpetrate a felony.

The prisoner was indicted under the twenty-second section of the crimes act of March 3, 1825 (7 Bior. & D. Laws, 401 [4 Stat. 115]). The indictment charged "that the prisoner, [James] Gallagher, on the high seas, with a dangerous weapon called a tormentor, (being a meat-hook,) held in his right hand, in and upon Isaiah Hartless did make an assault." &c. Moved, in arrest of judgment, that the indictment was bad, in not charging the assault to have been committed "feloniously," or with an intent to perpetrate a felony; that the mere use of a dangerous weapon, abstracted from the "intent" with which used, was not contemplated to have been made a "felony"; that the twenty-second section had in view the use of a dangerous weapon with a felonious intent, and intended generally to punish "felonious assaults." The phraseology indicated this classification. All the other assaults named were "felonies," and the word "other," in the sentence, "shall, with a dangerous weapon, or to perpetrate any other felony," supposes "the intent to commit a felony" as necessary to be charged on an assault with a dangerous weapon. In support of this construction, the view taken of the twenty-second section by the chairman of the judiciary committee, Mr. Webster (1 Gales & Sea. 330), was referred to, who remarks, "that no provision had been made for that class of offences called 'felonious assaults,' for want of which it had actually happened that a sailor, who cut the throat of his captain with 'a razor' from ear to ear, could receive no punishment whatever, because the captain had recovered." That the omission in the indictment was fatal, 2 Hale, P. C. 170, 184, and Starkie, Cr. Pl. c. 4, pp. 80, 242, were cited.

After advisement, the court, by THOMPSON, Circuit Justice, decided, that the phraseology of the twenty-second section was not free from obscurity; but the court were of opinion that the act contemplated a misdemeanor, and not a felony, in providing for an assault with a dangerous weapon. That the indictment, therefore, was well enough. The prisoner was, accordingly, sentenced.

J. A. Hamilton, for the United States.

W. Q. Morton, for prisoner.

NOTE. In North Carolina, the court may inflict a fine only upon one convicted of an assault and battery, with intent to kill; they are not bound to imprison. State v. Roberts, 1 Hayw. (N. C.) 176. If one man deliberately kills another, to prevent a mere trespass on his property, whether that trespass could or could not be otherwise prevented, it is murder; and consequently an assault with intent to kill, cannot be justified, on the ground that it was necessary to prevent trespass on property. State v. Morgan, 3 Ired. 186. A man shall not even in defence of his person or property, except in extreme cases, endanger human life, or great bodily harm. Id. In criminal, as in civil cases, if there be an assault, it cannot be justified, other than by showing specially, all the circumstances which render the act rightful; and the sufficiency of the alleged justification is a matter of law. Id.

In Pennsylvania, an assault and battery with intent to commit a capital offence, as rape or murder, or an attempt to commit the crime against nature, offences in their nature infamous, would fall within the class of offences described in the fourth section of the act of April 5, 1790, as offences not capital, for which by the laws in force before the act to amend the penal laws of this state, burning in the hand, cutting off the ears, placing in the pillory, whipping or imprisonment for life, was or might be inflicted. Offences of this description might be punished by imprisonment at hard labor for any term not exceeding two years, at the discretion of the court, in pursuance of the fourth section of the act of April 5, 1790; and by the act of 4th April, 1807, the time is extended to a period not exceeding seven years. The court, in giving the opinion in Scott v. Com., 6 Serg. & R. 227, did not decide upon the proper punishment for an assault and battery with intent to kill, but simply determined that this offence did not subject the

---

[1] [Reported by Elijah Paine, Jr., Esq.]
[2] [District not given.]